# THE QUEEN *vs.* LEN TAI.

## EXCEPTIONS.

HEARING, MARCH 24, 1893.          DECISION, APRIL 17, 1893.

### JUDD, C.J., BICKERTON AND FREAR, JJ.

A verdict finding the defendant guilty of embezzlement of the money of others, is not contrary to the law and the evidence on the ground that the defendant was interested in the money as a partner with the others, there being evidence to sustain a finding that the defendant was only an agent of the others, and the jury being instructed that if they so find, they must also find that the money belonged to the others and not to the defendant, and there being evidence to show that the defendant was merely to receive and had already received a 5 per cent. commission on the money collected by him.

### OPINION OF THE COURT, BY BICKERTON, J.

In August, 1891, the defendant, a Chinaman who understands English, arranged with the manager of the Pepeekeo Plantation, for a job of clearing a certain piece of land of about eighty-five acres in extent of its natural growth so as to be fit for plowing. The price was to be $30 per acre. The defendant told three Chinamen named Fook Lock, Lum Hin and Wong Lum that he could get such a contract for them. They looked at the land and authorized him to make such contract for them and agreed to pay him a commission of five per cent. for his services in obtaining the contract and for acting as a middleman between them and the plantation during the progress of the work. The contract was made in writing between the plantation and defendant, and the three men, taking in others with them, went to work and completed the clearing of 87 acres in about six months. During the progress of the work orders for Chinese provisions were made by one of the three partners on a Chinese storekeeper,

the goods supplied and the price of these as well as the rice and tools furnished by the plantation were to be deducted from the contract price of $30 an acre for 87 acres which amounted to $2610. The defendant drew the money and settled some of the claims, but did not pay the balance, which is claimed to be $1600, over to the three men above named who called themselves the contracting "hui." The jury found the defendant guilty of embezzlement at the last January term of the Circuit Court for the Fourth Circuit.

The matter comes to this Court on exceptions to the verdict as being contrary to the law and the evidence.

The position taken by defendant's counsel is that the defendant was a partner in this transaction, and was interested in this fund to the extent of his five per cent. commission, and therefore could not be guilty of embezzlement, for a man cannot embezzle his own money; that there never was a segregation of the respective interests of the partners and the appropriation of the general fund of the partnership.

The prosecution offered in evidence three pieces of paper with Chinese writing on them; these were indentified by the witnesses as coming from the defendant. When the witness Lum Hin was shown the one written on brown paper marked exhibit "A;" he says "Len Tai gave me this, and that was written in Tong Chong's place and given me there." When asked who wrote it, he says "Len Tai wrote it; that was the balance sheet drawn up by Len Tai and given to the book-keeper; Len Tai gave it to me and I gave it to Fook Lock." The paper is also identified by Fook Lock as the paper he got from Lum Hin; he also says "I know it is Len Tai's handwriting;" he also testifies as to the contents of the document.

We have had Mr. Li Cheung, the official Court interpreter, give us a translation of these Chinese documents. Exhibit "A" is a statement of account furnished by defendant; it shows that eighty-seven acres of land has been worked for $2610; then an item, eighty-nine days work furnished by the plantation at $22 per month, $75; then an item of $130 for

commissions, these two items making a total of $205; then comes a memo. " When you have received this paper, please deduct this amount and after deducting it the remainder is to be divided. Saturday is the day fixed for pay. No other news. Again, the provisions are not included in this statement." This agrees very closely with the translation of this paper given at the trial. The item of $75 is explained in the evidence of Fook Lock, as being the amount paid by the plantation to some Japanese to complete the work according to the contract, and had to be deducted from the $2610.

Exhibit "B" dated December 31, 1891, is a bill from Quong Fook Lung to Len Tai camp, for goods and provisions furnished amounting to $398.72½. Exhibit "B1" dated January 28, 1892, is a bill from Quong Fook Lung to Len Tai camp for goods furnished $73.85 and account rendered $398.72½, total $472.57½. These two bills are not receipted. This evidence stands uncontradicted; these documents at once remove the proposition or contention that defendant was a partner with these other men; his own written statement shows him to be a middleman or agent; he charges his five per cent. commissions on the amount to be received for the work done; he even includes and charges commissions on the $75 that was paid to complete the work to the satisfaction of the plantation. The fact that the name of the "hui" was "Len Tai Camp" does not make Len Tai, the defendant, a partner in the hui.

Section 1, Chapter 18, of the Penal Code, defines embezzlement as follows: "If any person who is entrusted with, or has the possession, control and custody or keeping of a thing of value of another, by the consent or authority, direct or indirect of such other, without the consent and against the will of the owner, fraudulently converts or disposes of the same or attempts so to convert or dispose of the same, to his own use and benefit, or to the use and benefit of another than the owner or person entitled thereto, he is guilty of the embezzlement of such thing." It will be seen that our

statute applies to any person who is entrusted with the control  *  *  *  of a thing of value of another.

The Court charged *inter alia* as follows: "The question of agency arises in this case. If the jury believe from the evidence that the defendant in the transaction referred to in the evidence, was acting not as a principal but as the agent of other parties, then they must find that the money received by him from the Pepeekeo Plantation was not his own money, but the money of those for whom he was acting as agent."

"It makes no difference in law whether the contract for the work in question was made out in his own name, or in that of his principals, if he had principals. If the jury believe that the contract was intended to be and was the contract of others than the defendant, or that defendant was acting only as an agent for others in his dealing with the plantation, then they must find that the money received by defendant from the plantation in the course of that dealing did not belong to him, but to others."

"If the jury find from the evidence that the money received by defendant in reality belonged to others, and that those others were the persons named in the indictment, it will then remain to decide whether defendant converted and disposed of such money, or any of it, without the authority or consent of its owners. If he did so convert or dispose of it, then he is guilty of embezzlement."

There was no exception taken to any of these instructions; they went to the jury as the law of the case given by the Court, and they had to apply it to the facts as they found them. There were certainly some little inconsistencies in the evidence of the Chinese witnesses which might be accounted for by imperfect interpretation; but it was uncontradicted, for no evidence at all was offered for the defense. The fact was left entirely to the jury, and their finding of fact is clearly sustained by the evidence. On the evidence and the law as given by the Court, we are of the opinion that the verdict was not contrary to the law and the evidence.

The exceptions are overruled.

*Attorney-General* and *C. W. Ashford,* for prosecution.

*J. M. Davidson,* for defendant.

